Next case on our call this morning is agenda number 14, case number 107503, People of the State of Illinois v. Sean Petrenko. Counsel may proceed. Good morning, Your Honor. My name is Stephen Wilshin. I'm here for Mr. Petrenko. I haven't been here in some time, and I think it will probably be a much longer time before I appear before the court when the court has decided a case only a couple of months ago which adopts, in large part, my argument about what kind of petition should advance to the first stage. And I'm referring to the Hodges decision which refines the gist standard to whether a petition Counsel, in that you're going to be gone for a long time, maybe it will help if you told us your name today. I thought I did, Your Honor. My name is Stephen Wilshin. Okay, thank you. Of course, the test now is whether a petition is subject to dismissal that doesn't state an arguable basis in law or in fact. And I think if we were to take a survey of the cases which deal with this issue of gist of claims, and we were to take a survey of the cases which deal with this issue of gist of claims, and we had to express what they all meant in just lay terms, I think we would say that the successful petition, the one that advances, is the one in which the court feels as though the petitioner is on to something. And I know that's not a very lawyer-like way of saying it, but it's expressed in some of the law, for instance, in the Edwards decision, wherein the court said that a petition that can advance, does not necessarily state a complete claim, and that it may lack detail in some areas. In other words, the court deals not with actuality, but with some degree of potentiality. The concurrence in Edwards talks about how there's a real possibility that there's a constitutional claim in the petitioner's pleading. My client's claim is not just a Fourth Amendment claim, and it's not just a Sixth Amendment claim. There's a little more here. It's kind of like a due process claim, and he's making an allegation that there's some type of a deception involved in the process that led to his conviction. You make a Frank's claim, right, counsel? Yeah, that's part of a Frank's claim, yes. My question is, even if we, and it's related to the empty money jar, right, and the defendant had been in the apartment prior, right? Yes, that's correct. Okay, before I even get into the, what's that used for, what about all the other evidence? I mean, how would, accepting your argument with respect to the empty money jar, you know, a single right-handed glove that matched a single left-handed glove found in the victim's apartment, several pieces of the victim's mail, a key with the tip broken off. The trial court was informed that after the murder, the police discovered a broken piece of metal stuck in the lock in the back door of the victim's house. Doesn't taking together this additional evidence, even without the fingerprint evidence on that jar, isn't that sufficient to establish probable cause in this case? Well, it might be a lengthy answer. I think there are very few judges in the state that are not going to issue a warrant very quickly to prove that there was a single right-handed glove. If the police come to them and say, we found the offender's fingerprint at the murder scene, and there's this tendency psychologically to, like, anchor your decision on facts which are pretty much irrefutable and have a lot of probative force. And if they didn't have any of this other evidence, that fingerprint would have been very damning. And so, in other words, I'm saying that that has a real lot of impact. And secondly, in another part of my client's petition, just kind of, it's totally divorced from the Frank's part of it, he says that the gloves didn't match, that they actually didn't match. And in addition to that, some of the evidence at the trial was, there was evidence at the trial that there was another fingerprint found on the mug. And I think the police were aware of that, and it was not my client's fingerprint. And I, but my other issue is... And I do want to get into just briefly the fingerprint on that jar or mug or whatever you want to call it. You know, when considered in connection with the additional evidence that I've already brought up, the presence of defendant's fingerprint on this victim's empty money jar takes on substantial weight, doesn't it? Whether or not the defendant had ever been in the victim's home apartment lawfully, there's still some weight to the fact, when you put that together, in there before or not, with the glove and the key and all that other... Oh, in other words, had the judge been aware that he was there? If we correct the omission, the print still has some... Yeah, even at the time if he was told that he had been in the apartment prior, the fact that there are still fingerprints on an empty money jar taken in conjunction with all the other evidence, I mean, there's even substantial weight knowing that he had been in the apartment before, isn't there? It has weight, but not nearly as much weight as it does when you omit that he was lawfully present. But, for instance, in the Gomez case, there was a print found in the decedent's kitchen, and there was other evidence linking the offender in that case to the crime. But the court said that, well, the print is in a place where the offender likely was, and that's where the print was found. And the offender was, and likely was lawfully, pursuant to invitation of the landlord in that case. And the court said that, well, we're not going to attach a lot of significance to that print. But one of the other things I want to say is that I really kind of feel as though I'm kind of being drawn off sides with this kind of argument about materiality, because he's got a low threshold at this point. And I can't amend this petition now under Tremaine Jones. On appeal, I can't amend it. So here we've got a guy who's doing a natural life term in a maximum security prison, and I don't think he graduated from high school, and he's called upon to write this pleading, which gets over this hurdle. And we're calling upon him to file a pleading, in essence, that he's saying his lawyer should have filed. Or something akin to what his lawyer should have filed. In other words, in the four corners of his pleading, establish materiality under Franks. And that, I think, is the wrong way of looking at this. What exactly, counsel, is required under your argument to satisfy the just claim? Does the defendant have to satisfy the two prongs of Strickland? Well, in this case, the second prong of Strickland is really kind of a surrogate or a proxy for the materiality under Franks. If he doesn't show materiality, then assumingly he doesn't have prejudice. There's another prejudice element to this, and that is whether the material that was seized pursuant to the warrant played a role in his conviction. And that is undisputed. It very much did, because there were some shoes that were seized and some DNA evidence and that type of thing. But that's not really in play. So you're saying you don't believe he should have to show the second prong of Strickland in order to get over the just hump? No, I don't think he should, because that's a little bit like the standard that was rejected in Edwards. And that was whether he had to make a substantial showing of a constitutional violation. A Strickland claim, of course, has the two prongs. The first prong is legal, in other words, has there been some kind of a professional lapse? Did he boot something? Did he miss something? And oftentimes that's just legal, and it's a real quick call. Like the petitioner says, my lawyer should have admitted some evidence, and the judge knows that as a matter of law that evidence is just not admissible. But the prejudice prong, now that's really kind of contextual, and now we get into all the facts of the case and what impact this could have had. And that's kind of where a lawyer comes in, in my view. One of the things that might be profitable to illustrate what I'm talking about in this case is right in the context of this case, my client makes another claim in this case, and that is, his lawyer was ineffective because his lawyer didn't seek suppression of his statement under Miranda v. Arizona, and that's the sum and substance of the argument. Now that, I will readily concede, is just a conclusory claim. It's not arguable, and it's arguable in law, of course, because of course there is this decision known as Miranda v. Arizona, but there's no facts there. And the only facts we do have are that my client made a statement to a police officer in the kitchen of his home, his mother was there, there was no showing of, you know, that this was an angry encounter, accusatory. So for purposes of Miranda, the record shows that there's absolutely no custody, so there's no interrogation, so Miranda just doesn't apply. But what if he had said, there were all these indicia of custody, and my lawyer just ignored it? And in addition to that, maybe someone wasn't really forthright about the indicia of custody. You know, I realize custody is a lot different than materiality under Franks, but they have one thing in common, and that is there's no real set mathematical formula for determining when you have those elements. I don't think he would have, in this hypothetical Miranda setting, I don't think he would dismiss that out of hand if he had made those allegations, because again, he's kind of on to something. He's got some facts to support this claim. They're unrebutted on the record, you know, at that point, I mean, we have to take the petition as true. And we also have this element that someone was deceiving the court as to the basis of this claim, and someone who is trying to, like, play fast and loose with the facts is going to make sure that he kind of covers his tracks. Do you deny, counsel, that there were enough facts, separate and apart from all this, to establish probable cause? And that, in and of itself, would make the petition frivolous, even assuming everything that you've talked about? I mean, isn't that what it comes down to, and what the trial court did in the PC petition here? You know, if he got, let's say he got a lawyer, and again, I'm kind of stuck here, because I can't really amend the petition, but let's say he got a lawyer. Let's say he got a lawyer. His lawyer could have said, look, the fingerprint, we could reallege what I said about the fingerprint. So you're amending the Post-Conviction Hearing Act, right? You're amending the facts of this case. Pardon me? You said, let's assume he got a lawyer. Yeah. I mean, is that the standard we're to look at, to let's assume that this petition was written in a different fashion with a lawyer? What I'm saying is that, I know the subtext of all this, that there's a lot of these, like, non-meritorious claims, that they don't go anywhere. And that we have to kind of head them off the pass. I realize that. But on the other hand, it's the very nature of a staged system, where you have one step and another step, that you have to accept that at the first stage there's going to be this inchoate quality to what the man says. And it's not going to be a winning claim on the four corners of his pleading. That's what lawyers file. No, but that's not my question. My question is, there are standards that apply to the first stage. Why is this standard not met simply by indicating that, assuming everything in that petition is true, assuming it's true, that it wouldn't have made any difference, and therefore it makes it frivolous, because there's other things there, a number of other things, that would indicate probable cause? Because he's a pro se petitioner, and that's the standard we would hold to a lawyer. The trial judge would say, you know, let's say a lawyer filed my client's petition. Yes. A trial judge could say to that lawyer, this does not get you a Frank's hearing. He can say that to the lawyer, but he can't say it to a pro se petitioner. That's because the pro se petitioner is under these disabilities that will not really let him file with something as good as a lawyer could file. I hope I answered that question. Far greater number of post-conviction petitions moving to the second stage. I mean, it seems to me that your argument, and it's a fair argument, is that a lawyer is going to do this much better. Well, of course they would, but if that was the standard at this point, very few petitions would be discharged at this point. You know, in my experience, a lot of these are, you know, I mean, the petition here in this case, I really felt as though there's only one claim that had legs. Just by a matter of illustration, and my office files a lot of Finleys in these things, and in addition to that, my office also wins a lot of these, you know, arguments that there is a general, and, you know, this is a general case. This court decided Hodges, for instance, and there was Edwards, and I think Brooks is another one. So this is not an uncommon variety of relief that the summary dismissal was wrong. And I don't think this is going to open floodgates, because, look, if the lawyer is appointed, he can amend it, the state files a motion to dismiss, and if it's really that clear that it's a loser, then the state wins at the second stage. I mean, you don't go to an evidentiary hearing. I mean, the state is kind of suggesting that, well, we're just going to advance this evidentiary hearing, well, wait a second, we've got to walk before we can run. How do we get around that the Post-Conviction Hearing Act is to be strictly construed under your analysis? How are we doing injustice to what the courts are to look at at the various stages of review with respect to a post-conviction petition? How do we get to, I mean, is your argument better served for the legislature to amend the Post-Conviction Hearing Act? No, I don't think there's any, my position is that this is kind of a straightforward application of Edwards and Hodges. But basically there's enough there regardless. Can I ask you a factual question? I just need to know this. One of your assertions is that, and I believe it was both raised at the appellate court in your brief, that the police showed a reckless disregard for the truth, failing to mention that the mail was found in your client's trash was several months old. That mail, recall that? Yes, I remember that. Was that argument raised in the petition that was filed in the trial court or not? Yes, it was. It's in there. He mentions that the mail is at the youngest six months old, at the oldest is about nine months. I saw, I see your time's running out. Can you just quickly address the whole Palmer? Oh, sure, I'm sure. What this all gets down to is the possibility that this natural life sentence is going to be modified sometime in the future. And my opponents suggest that, well, this is going to be a basis of some kind of reprendi relief. And, you know, reprendis run its course. And it's not retroactive, and I just don't think that's going to yield modification of the sentence. And, of course, the other basis by which it could be modified is executive clemency, but that's erratic and hit or miss. And the only one left is the General Assembly. The General Assembly defines what conduct is criminal, and the General Assembly sets what penalties are to be imposed for violation of those provisions. If the General Assembly should come around and say, look, this natural life sentence should be something else, then that's the General Assembly's job. Counsel, if we find the sentence that was imposed here is not void, is the defendant forfeited the sentence? Has he forfeited the sentencing issue? It's okay if it's not void. Has he forfeited it? In other words, do we have to find the sentence that's void in order to find that there's no void? I think so. And I think Palmer says it's void. I don't know how much time I have, but there was a proposal in the General Assembly which died. And it was referred to an elder sentence adjustment, kind of created a rule of 75. And if you were at least 50 years old and you had done at least 25 years in prison, then you could adjust your sentence. It never became law, but let's say it did. And my client might have been eligible for that in about 2031, I think. But if that had become law, when he applied for the sentence adjustment, the relevant authority, and I think it probably would have been the Prisoner Review Board, could have taken into consideration that the guy had this consecutive 10-year sentence for residential burglary. So the residential burglary sentence really has only symbolic meaning because you can only do one life. And he's got a natural life sentence. And I just don't think we should modify Palmer or the code and hold it hostage to these unforeseeable events. About modification of the natural life sentence, I say I'm out of time. Your Honors, we'd ask that the cause be remanded for further proceedings, of course, and at least vacate toward the residential burglary sentence. Thank you very much. Good morning, Your Honors, Counsel, and may it please the Court. I'm Assistant Attorney General Carl Treble, representing the people of Illinois. I'd like to start off with respect to Palmer. Palmer does mention the word void in it. And if, indeed, the waiver argument is not persuasive to this Court, is there any distinguishing feature between treating a consecutive term of years any differently than a consecutive term of natural life? Yes, Your Honor. Two points. First, let me briefly state that the void issue in Palmer appeared to be conceded by the parties. That was the way that Palmer read, at least. I don't have the briefs in front of me in that case, but Palmer started with the assumption that the parties agree that we can reach this issue even though it's forfeited because it's a void. It's an issue of voidness. We're not conceding that it's void. And I'll get to that in a moment. But to answer your question, it is distinguishable because in Palmer you had a case where a defendant was sentenced to five life terms. And one of the arguments in Palmer was that, well, something could happen in the future that might change the sentencing, or one of the parties, one of the branches of government might act in a way that reduces one of those sentences. And this Court argued that no matter what happens, he's going to have at least a life sentence remaining. That's what the majority said in Palmer. Here, if something happens, say, to the statute that made the sentence something from the minimum murder sentence to a life sentence, then he would have a sentence reduction to be serving a term of years. And the General Assembly has expressed a preference that it be a term of years that is not a void. That is, plus the ten years of consecutive sentencing. For instance, if the enhancement that made it a life term was removed by something like an apprentice decision in the future, or by a single subject ruling by this Court, he would be left with a term of years. And that possibility might seem remote, but it's not speculative. It's important to remember that this Court's decisions apply not just to this defendant, but the reasoning and holding will of the defendant. And that will apply in future cases as well. And it's not unreasonable to think that a case like Apprendi or another single subject decision would come out in the future that would remove the life term enhancement and make his sentence a term of years. And if that happens in the future, what the General Assembly has said is that they want the following sentence to be served consecutively. And it's a decision that doesn't raise any constitutional prejudice to the defendant. If everything remains the status quo, the defendant's going to serve a life term. The only possible party that can be prejudiced by this Court's holding of applying this Court's holding of Palmer to this case would be the people. And it would be a situation like I mentioned, like an Apprendi case. So since there's only one party that can be prejudiced, and there's no constitutional values in place, I think it's important to just defer to what the General Assembly has expressed its desire be, which is that a consecutive term be applied. You don't have to overrule Palmer, Your Honor, in order to get there, because Palmer can be distinguished, as I just said, based on the fact that its rationale was at least in part based on the fact that there were five life terms in that case, and that no matter what happened to even four of those, a fifth remaining life term would be in place. Here there's only one life term, and if something happens to the enhancement that makes that a life term, it would just be a term of years sentence. So, but if this Court disagrees and feels that it cannot distinguish Palmer, then yes, Palmer should be overruled. Because Palmer was improperly grounded on the notion that just as a matter of natural law, a person cannot serve more than one life term. But that's a policy argument. There's no constitutional flaw that Palmer identified in the sentencing structure of imposing consecutive sentences. And the General Assembly said expressly that consecutive sentences should be imposed in this case. This Court never argued in Palmer, as it had in death penalty cases, that a life term is something other than a term sentence. So, again, I think policy arguments like that should be left to the General Assembly, if this Court feels that Palmer cannot be distinguished. But unless there's any other questions on that issue, I'll turn to the merits analysis. On the Frank's claim, in our view, Petitioner's never answered Justice Thomas' question. What happens when you apply the Frank's analysis? Here the record contradicts Petitioner's Frank's claim, and thus refutes his claim that there was ineffective assistance of counsel for failing to make it. This Court did recently hold in People v. Hodges that where an ineffective assistance claim is contradicted by the record, Petitioner has no arguable basis in law for that claim, and it may be properly dismissed as frivolous and patently without merit. And Hodges expressly rejects Petitioner's argument that an ineffective assistance of counsel claim need not discuss or overcome the hurdle of the Strickland prejudice prong. On page 7 of the Westlaw citation to Hodges, this Court expressly holds that you have to have an arguable basis in law, both for the performance prong and the prejudice prong of Strickland, and that's consistent, as we discussed in our opening brief, with cases like People v. Robinson, which had previously held that the first stage dismissal is proper where there's no showing of prejudice. And here it's not arguable that there's prejudice. Petitioner fails in his reply brief and failed here in his opening argument to answer the fundamental question underlying Frank's, which is even taking away the contested information out of that search warrant affidavit, is the remaining information sufficient to support probable cause? And it is. Here there was a right-handed glove found in the trash can that had red, white, and blue paint on it and a broken off key. And the search warrant stated that the victim's door had the door lock had a piece of metal broken off in it, that there was a lot of evidence there at the murder scene, and that there's a left-handed glove found at the murder scene with red, white, and blue paint on it. Those facts have not been challenged by Petitioner, and he has never addressed how those facts would not support probable cause, and I think he's not addressed that because he simply cannot make that argument, and that shows that there is no argument at law that there is a Frank's claim here. And since there's no argument at law that there's a Frank's claim, he can't possibly show Strickland prejudice. So even under the recent holding of Hodges, since he can't show Strickland prejudice, it was appropriate to dismiss this as frivolous and patently without merit. Petitioner talked a little bit about that his contention was, well, he characterized our contention as being that his legal pleadings lacked some sort of detail, but our argument is not that his legal pleadings didn't specifically state the full Frank's test or deal with it. It's rather that even assuming all his facts are true, he can't succeed under Frank's. So it's not that he didn't state the gist of a Strickland claim. I mean, he definitely stated, you know, my lawyer didn't call for a Frank's hearing. The problem is that he has no colorable claim at law, no arguable basis at law to support a Frank's hearing. A Frank's hearing doesn't call for something that would require an attorney's investigation. A Frank's hearing says, okay, let's take away all the contested information and just look at what's left over. And since that's all the court's required to do, there's no need to go beyond the four corners of the search warrant affidavit, strike out the information that's contested, and reevaluate it. And indeed, trial courts do that kind of thing every day. Every time they're handed a search warrant application, a trial court takes a look at it and makes a probable cause determination. And so it's completely reasonable to think that a trial court could look at the four corners of the search warrant application and apply the Frank's test and say, well, his claim is just simply frivolous and patently without merit, because there is probable cause here with the remaining information, the gloves and the key. Tishman keeps trying to change his test and his answers by focusing on the fingerprints. And that's not the Frank's test. The Frank's test doesn't say, well, just how persuasive was this omitted information? What Frank says is, okay, let's take away the contested information and look at what's remaining. And that's what this court did in People v. Sutherland, which we cited in our briefs as well. And the answer here is that that remaining information supports probable cause. And Petitioner even admitted here at argument that there is still a remaining weight towards probable cause, even considering that omitted information. And probable cause is a low hurdle, so the fact that there is some weight towards probable cause I think admits that he could not win a Frank's hearing. And finally, he talked a little bit in the briefing and talked here in a Miranda example about the fact that there might be some hypothetical cases where a petitioner makes a post-conviction petition that just doesn't have any facts at all, and it's completely vacant of facts, and somehow suggests that that makes our argument improper. But Hodges deals with that eventuality as well, and the Post-Conviction Act more specifically deals with that eventuality. Because under Hodges, you have to have either a colorable claim of law, or you have to have both a colorable claim of law and a colorable claim of fact. And it can be dismissed as frivolous and patently without merit if either of those is missing. So if a petitioner makes a very specific Miranda claim and has no facts to back it up, under Hodges there would be no arguable claim of fact, and it would be properly dismissed under his hypothetical, under that rationale. And your Honor, unless there's any further questions, we'd ask that you affirm the Court's decision and judgment below. Thank you, counsel. Let me address the Palmer claim first briefly. My opponent says that this is a policy argument that's best addressed at the General Assembly, but I think Palmer's about three and a half years old, and to my knowledge they haven't addressed Palmer. They could have modified the code to validate sentences, consecutive natural life sentences, and in the past they've never been very bashful about things like that. So if it's really that offensive as policy, there hasn't been any follow-through by the people who enunciate the policy. And I don't, this Palmer-type claim isn't, there's another species of this in law, and it's like the one act, one crime doctrine, which this Court upheld in Artis. That is, there's a redundancy here, and the courts eliminate these redundant judgments. And if I can just proceed to Frank's issue here. The evidence about the doorknob, I think the doorknob is almost a red herring here, because, yeah, there's a recital that this doorknob looked like it was tampered with, but no one ever took the position that the rear door, or the rear door was the point of entry. That's not in the warrant application. There's just this discussion of the doorknob, and there's a lab report, which subsequently indicates that the doorknob was examined, and there was no broken key in it. It was just locked, it was totally intact. And there's an expert who says that the gloves have white paint on it, which could come from the same source, but the expert doesn't say anything about the nature of that red paint and the blue paint. And I would really like to take a look at those gloves. And my client says that the gloves really don't match, and that could have been another element in a Frank's analysis. But with regard to the expert testifying concerning the glove, this came long after the search warrant was issued, did it not? Well, yes, in both cases, yes. But the matter with the paint might be something that would be readily ascertainable by just with a visual inspection, that they really aren't that much alike. Now, the doorknob, I'll grant you that. But I wanted to make a point on another matter about, we started a Ledbetter case in which the petitioner alleges that a police officer who took his statement had been convicted of various felonies and was taken off the force and such, the officer lied about the offender's statement. And that claim was allowed to advance to the point of lawyer stage. He was allowed to go forward with the claim, but in the large part, that type of claim was, that petition was real sketchy on the facts, because we really don't know what the inner play was of the officer's felony involvement and his dismissal from the forces. But it was certainly more than speculative, and it had that quality to it that it convinced the court that there might be something here that would state a real possibility of a constitutional violation. Again, Your Honor, we request that the cause be remanded for the appointment of counsel and that the residential burglary sentence be modified to be concurrent. Unless there's any more questions. Thank you very much. Thank you, Counsel. Thank you, Counsel. Case number 107503 will be taken under advisory.